UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

REAL APE ENTERPRISES, LLC,
a Florida limited liability company,

    Plaintiff,

v.

TFORCE FREIGHT, INC.,
a Virginia corporation,

    Defendant.

Case No.:   1:22-cv-967
Hon.

_____

Joshua L. Whicker (P84855)
KOTZ SANGSTER WYSOCKI PC
400 Renaissance Center, Ste. 3400
Detroit, MI  48243
Telephone: (313) 259-8586
jwhicker@kotzsangster.com
*Attorneys for Plaintiff*

_____

## PLAINTIFF'S COMPLAINT

NOW COMES PLAINTIFF, Real Ape Enterprises, L L C , by and through their attorneys, Kotz Sangster Wysocki, P.C., with its Complaint against Defendant, TForce Freight, Inc., and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Real Ape Enterprises, LLC ("Plaintiff") is a Florida limited liability company that had business operations and tangible property in Cass County, Michigan at the time of the events that are the subject of this Complaint.

2. Defendant TForce Freight, Inc. ("Defendant") is a Virginia corporation that provides shipping services nationally and in the state of Michigan, and was providing aforesaid services at the time of the events that are the subject of this Complaint.

3. This Court has jurisdiction pursuant to 49 U.S.C. §14706(d)(3), as this claim arises under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §14706 et seq.

4. This Court is the appropriate venue for this action pursuant to 28 U.S.C. §1391(b)(2) because the Western District of Michigan is where a substantial part of the events and conduct giving rise to the claim occurred.

## GENERAL ALLEGATIONS

5. Plaintiff incorporates the preceding allegations as if fully set forth herein.

6. Plaintiff is a data center and services start-up business that utilizes sophisticated computer hardware and software to "mine" and/or obtain cryptocurrency.

7. Much of Plaintiff's computer hardware was stored at a hosting site located at 104 Lagrange Street, Dowagiac, Michigan.

8. Desiring to utilize the services of a hosting site in North Carolina, Plaintiff arranged for the pickup of its computer hardware through Defendant's

online portal.

9. At no point in the process of arranging for pickup of the equipment, did Defendant's online system present any terms, conditions, or tariffs to Plaintiff as a user of Defendant's online system.

10. The online system presented Plaintiff with a blank form on which Plaintiff provided the relevant shipping information.

11. Plaintiff was required to indicate on the form if any materials to be transported by Defendant are fragile, so that such materials will be handled with care.

12. Plaintiff affirmatively indicated that its equipment was fragile.

13. After submission of the form, Defendant's system generated a bill of lading and provided a set of terms and conditions, of which Plaintiff had no awareness at the time it submitted the form. A copy is of the Bill of Lading is attached as **Exhibit 1**.

14. The bill of lading indicates that it is a "Straight Bill of Lading" and is non-negotiable. **Ex. 1**.

15. Vague reference is made to the "tariffs" on the bill of lading, in fine print, under a section titled "Carrier Liability." **Ex. 1**.

16. The tariffs are nearly 100 pages of terms and conditions that purport to apply to the transaction.

17. The tariffs were never presented to Plaintiff.

18. Again, Plaintiff had no awareness of the tariffs or the terms and conditions at the time it filled out and submitted the form.

19. Elsewhere on the bill of lading, Defendant states "Guaranteed Services are subject to the terms, conditions and limitations set forth… in the tariffs." **Ex. 1**.

20. Plaintiff did not select a Guaranteed Service on the bill of lading.

21. At the time of pick up, Defendant's driver applied their "Carrier Pro Label," which affirmatively stated that the "materials were properly classified, described, packaged, marked, and labeled, and are in proper condition for transportation…" **Ex. 1**.

22. Further, the bill of lading indicates that when the property is received by the carrier it is "in apparent good order" and that services performed pursuant to the bill of lading, are performed subject "to all conditions… herein contained, including conditions on the back hereof…" *Id.*

23. The tariffs are not contained within the bill of lading, nor are they printed on the back of the bill of lading. *Id.*

24. At no point did Defendant indicate to Plaintiff that it could pay a higher rate to reduce its own risk, or for Defendant to assume more risk, with respect to the shipment of the goods.

25. In fact, Plaintiff was never provided with any opportunity by which to select any level of liability or elect any options outside of what is featured on the face of the bill of lading.

26. At no point did Defendant require Plaintiff to affirmatively indicate that it had received or reviewed any tariff or terms and conditions prior to producing the non-negotiable bill of lading.

27. At no point did Defendant seek any affirmative representation from Plaintiff, in writing or otherwise, that it was electing any specific level of liability or that it was aware of or acknowledged the level of risk to which it was being exposed.

28. Plaintiff did not have a fair opportunity to limit its risk, and if it had, it would have done so.

29. The bill of lading presented to Plaintiff does not indicate that Plaintiff made an absolute, deliberate, and well-informed choice to limit Defendant's liability and expose itself to more risk.

30. Defendant picked up Plaintiff's equipment on July 14, 2022.

31. On July 20, 2022, Defendant delivered Plaintiff's equipment to Plaintiff's new hosting site in Marble, North Carolina, where Plaintiff's hosting representative received it.

32. Upon delivery of the equipment, it became apparent that the

Plaintiff's equipment was significantly damaged during transport, while in the Defendant's custody.

33. Based upon the condition of Plaintiff's property upon delivery, Plaintiff's equipment had been dropped and/or crushed and then repackaged while in Defendant's custody.

34. Defendant attempted to hide the damage by repackaging Plaintiff's equipment prior to delivery.

35. As noted, Defendant acknowledged Plaintiff's property was properly packaged at the time it was picked up by Defendant.

36. Because Plaintiff's property was severely damaged while in Defendant's custody, Plaintiff promptly filed a claim with Defendant's internal claims department.

37. Plaintiff submitted its claim on July 22, 2022.

38. Defendant's claim representative denied the claim after a perfunctory investigation, in which Defendant asked for no information and made no effective inquiry into the matter.

39. Defendant, via its claims representative, indicated by e-mail and correspondence attached to the e-mail, that Defendant was denying the claim because the equipment was improperly packaged. Defendant's assertion in this regard is directly contrary to the acknowledgment Defendant made when

Defendant obtained the equipment from Plaintiff.

40. Defendant further represented that in addition to the tariffs, which were never provided to Plaintiff and were not included with the bill of lading, Plaintiff was also bound by "NMFC rules and regulations."

41. NMFC rules are a set of classifications established by the National Motor Freight Traffic Association, Inc., (the NMFTA) an industry association that is members only, and whose members are limited to "motor carriers operating in…commerce."

42. These are not government regulations, and Defendant never provided these rules to Plaintiff, nor did Defendant ever indicate, at any time, where the NMFC regulations could be found.

43. Upon information and belief, Defendant does not make these rules available to its customers and has not indicated to its customers whether it is an NMFTA member entitled to refer to or use the rules.

## COUNT I
## BREACH OF STATUTORY DUTIES UNDER 49 U.S.C. 14706

44. Plaintiff incorporates all previous allegations as if fully set forth herein.

45. Plaintiff and Defendant entered to a contract whereby Defendant agreed to pick up, safely transport, and deliver certain computer equipment

belonging to Plaintiff, without damaging said equipment.

46. Pursuant to the Carmack Amendment (49 U.S.C. 14706), Defendant, as a carrier providing transportation services, owed Plaintiff a non-delegable duty to act in a commercially reasonable manner, to properly supervise its employees and any sub-agents or sub-contractors, and to properly retain said employees and sub-agents or sub-contractors.

47. Defendant further owed Plaintiff a statutory duty to deliver Plaintiff's goods in the same good order and condition as it was in when picked up from Plaintiff.

48. Defendant breached its duties by failing to properly deliver the equipment in the same good order and condition as it was when picked up from Plaintiff, and when it failed to properly supervise its employees, sub-agents or sub-contractors, and to properly select or retain the same.

49. Defendant failed to adhere to its statutory duties as a carrier when Plaintiff's equipment was damaged during transport.

50. Plaintiff fully performed pursuant to its obligations under the Contract on July 15, 2022, when it paid $3,207.71 to Defendant for safe transport of its goods.

51. Moreover, Plaintiff timely and properly filed a claim with Defendant's internal claims system, and Defendant denied that claim after

perfunctory investigation, citing documents it had not provided to Plaintiff and making statements directly contradictory to its earlier statements that exposed it to liability.

52. Due to Defendant's failure to properly perform its statutory duties, Plaintiff's property was damaged in the amount of $1,452,872.02.

53. Additionally, prior to the time it was damaged, Plaintiff's equipment produced gross receipts of $72,490.77 through mining operations over a 60-day period.

54. Plaintiff has been denied this income since July 20, 2022, an 82-day period.

55. As of the date of this Complaint, Plaintiff's lost income associated with the destruction of the property is at least $99,070.72.

56. Moreover, in addition to the cost for replacing the specialty equipment and its lost income as a result of Defendant's breaches, Plaintiff will be forced to pay $18,898 in shipping and delivery charges to replace the equipment damaged by Defendant.

57. All of Plaintiff's damages are a direct result of Defendant's failure to properly perform its statutory duties.

58.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter

judgment in its favor and against Defendant in an amount not less than $1,570,840.74 plus Plaintiff's costs, reasonable attorneys' fees, and any other relief this Court finds equitable and just.

          Respectfully submitted,

          **KOTZ SANGSTER WYSOCKI, P.C.**

Dated: October 14, 2022

      By:   /s/*Joshua L. Whicker*
            Joshua L. Whicker (P84855)
            KOTZ SANGSTER WYSOCKI, P.C.
            400 Renaissance Center, Ste. 3400
            Detroit, MI 48243
            (313) 259-8500
            jwhicker@kotzsangster.com

Kotz Sangster Wysocki P.C. Attorneys and Counselors at Law